1 │ ROBERT A. HESSLING (State Bar No. 096466)
   │ rhessling@dgdk.com
2 │ MATTHEW F. KENNEDY (State Bar No. 199485)
   │ mkennedy@dgdk.com
3 │ DANNING, GILL, DIAMOND & KOLLITZ, LLP
   │ 2029 Century Park East, Third Floor
4 │ Los Angeles, California 90067-2904
   │ Telephone:  (310) 277-0077
5 │ Facsimile:  (310) 277-5735

6 │ Proposed Counsel for Amy L. Goldman
   │ Chapter 7 Trustee
7 │

8 │ **UNITED STATES BANKRUPTCY COURT**

9 │ **CENTRAL DISTRICT OF CALIFORNIA**

10 │ **SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| 11 │ In re | ) Case No. 1:09-13713-KT |
| | ) |
| 12 │ BROCKMAN BUILDING LOFTS, LLC, | ) Chapter 7 |
| | ) |
| 13 │         Debtor. | ) **MOTION OF TRUSTEE FOR ORDER:** |
| | ) **(1) AUTHORIZING TRUSTEE TO** |
| 14 │ | ) **ASSUME AND ASSIGN PARKING LOT** |
| | ) **LEASE AND WAIVING 10-DAY STAY** |
| 15 │ | ) **PERIOD UNDER FED.R.BANKR.P.** |
| | ) **6006(d); OR (2) IN THE** |
| 16 │ | ) **ALTERNATIVE, EXTENDING TIME TO** |
| | ) **ASSUME AND ASSIGN PARKING LOT** |
| 17 │ | ) **LEASE; AND MEMORANDUM OF** |
| | ) **POINTS AND AUTHORITIES AND** |
| 18 │ | ) **DECLARATIONS OF MATTHEW F.** |
| | ) **KENNEDY AND DAVID KEGARIES** |
| 19 │ | ) |
| | ) Date:  [To Be Set] |
| 20 │ | ) Time:  [To Be Set] |
| | ) Dept:  Courtroom "301" |
| 21 │ | )        21041 Burbank Blvd. |
| | )        Woodland Hills, CA 91367 |

22 │

23 │ ///

24 │ ///

25 │ ///

26 │ ///

27 │ ///

28 │ ///

-1-

# TABLE OF CONTENTS

                                                                    **Page**

TABLE OF AUTHORITIES ........................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................... 5

I.   INTRODUCTION .............................................. 5

II.  STATEMENT OF FACTS ........................................ 8

III. ARGUMENT ................................................. 12

    A.   The Trustee Should Be Authorized To Assume,
        And Assign To The Bank's Nominee, The Parking
        Lot Lease Because Such Assumption And
        Assignment Are Necessary To Preserve The
        Rights Under The Parking Lot Lease, And Such
        Lease Is Necessary For The Acquisition Of The
        FCO Relative To The Property. ...................... 12

    B.   The 10-Day Stay Period Under Rule 6006(d)
        Should Be Waived. .................................. 15

    C.   The 10-day stay period under Rule 6006(d)
        should be waived.  The 120-day period for
        assumption and assignment expires on July 29,
        2009.  The waiver is necessary because the
        120-day period for assumption and assignment
        expires on July 29, 2009.  In The Event That
        The Court Does Not Approve The Assignment And
        Assumption Of The Parking Lot Lease And The
        Waiver Of The 10-Day Stay Period, The Time For
        Such Assumption And Assignment Should Be
        Extended For 90 Days From July 29, 2009 To And
        Including October 27, 2009. ........................ 16

IV.  CONCLUSION ............................................... 18

DECLARATION OF MATTHEW F. KENNEDY ............................. 20

DECLARATION OF DAVID KEGARIES ................................. 22

-i-

340491.1 [XP]    25210

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re Victoria Station, Inc.,
    88 B.R. 231, 236 n. 7 (9th Cir. BAP 1988), aff'd 875
    F.2d 1380 (1989) ......................................... 16

In re Wedtech Corporation,
    72 B.R. 464 (Bankr. S.D.N.Y. 1987) ...................... 16

**Statutes**

11 United States Code,

    Section 365 ......................................... 12, 13
    Section 365(b) .......................................... 13
    Section 365(b)(1) ................................... 12, 14
    Section 365(b)(1)(A) .................................... 12
    Section 365(b)(2) ...................................... 12
    Section 365(c) ......................................... 13
    Section 365(d)(1)(A) .................................... 12
    Section 365(d)(2) ...................................... 14
    Section 365(d)(4) ........................... 2, 5, 13, 16
    Section 365(d)(4)(A) .................................... 16
    Section 365(d)(4)(B) ............................... 12, 13
    Section 365(d)(4)(B)(i) ................................. 16
    Section 365(f) ......................................... 15
    Section 365(f)(1) ...................................... 13
    Section 365(f)(2) ...................................... 13

**Rules**

Federal Rules of Bankruptcy Procedure,
    Rule 6006(d) ................................... 2, 7, 15

Local Bankruptcy Rules,
    Rule 9013-1 .......................................... 2

1      Amy L. Goldman, Chapter 7 Trustee ("Trustee") of the estate

2 of Brockman Building Lofts, LLC ("Debtor"), moves the Court

3 pursuant to Local Bankruptcy Rule 9013-1 and 11 U.S.C. § 365(d)(4)

4 for an order: (1) authorizing the Trustee to assume a Lease

5 Agreement (Residential Parking Usage Only) ("Parking Lot Lease")

6 dated December 4, 2003 between Thermo Grand Avenue, L.L.C., as

7 lessor, and the Debtor, as lessee, and assign the Parking Lot

8 Lease to the nominee ("Nominee") of Bank of America, N.A.

9 ("Bank"), which nominee will consist of either an existing

10 affiliate of the Bank or a new company to be formed and

11 capitalized by the Bank, with the right and obligation for further

12 assignment by the Nominee of the Parking Lot Lease to a

13 condominium owners' association to be formed by the Nominee, as

14 contemplated by the Parking Lot Lease, and waiving the 10-day stay

15 period under Fed.R.Bankr.P. 6006(d); or (2) in the alternative, in

16 the event that the Court does not approve the assumption and

17 assignment of the Parking Lot Lease and the waiver of the 10-day

18 stay period, extending the time for the Trustee to assume and

19 assign the Parking Lot Lease for 90 days from July 29, 2009 to and

20 including October 27, 2009.

21      This Motion is made on the grounds that: (1) the Court

22 previously authorized the Trustee to: (a) operate the Debtor's

23 business and real property consisting of a 12-story building

24 located at 520 West Seventh St., Los Angeles, California

25 ("Property") on a limited basis; (b) obtain credit from the Bank,

26 which is the beneficiary of a promissory note that is secured by a

27 trust deed affecting the Property, in accordance with the terms of

28 an Agreement Re Credit, Business Operations, And Parking Lot Lease

-2-

1 ("Agreement"); and (c) use the credit to pay the Trustee's
2 Expenses of Administration, as defined in the Agreement; (2) with
3 respect to the Parking Lot Lease, the Agreement provides, among
4 other things, that at the Bank's sole option and as additional
5 consideration for the Bank's providing of credit and to preserve
6 the Parking Lot Lease and enable the Bank or any purchaser of the
7 Property to later obtain the issuance of a final certificate of
8 occupancy for the Property, the Trustee shall seek to assume and
9 assign the Parking Lot Lease to the Bank or its nominee, provided
10 that the Bank informs the Trustee in writing that it elects to
11 exercise such option of assumption and assignment; (3) the Bank
12 has elected such option of assumption of the Parking Lot Lease and
13 the assignment of the Parking Lot Lease to the Bank's Nominee;
14 (4) the assumption, and assignment to the Bank's Nominee, of the
15 Parking Lot Lease (for the further assignment to an owners'
16 association to be formed by the Nominee) are necessary to preserve
17 the rights under the Parking Lot Lease, which is in turn is
18 necessary for the acquisition of a final certificate of occupancy
19 relative to the Property; (5) the waiver of the 10-day stay period
20 is necessary because the 120-day period for the assumption and
21 assignment of the Parking Lot Lease expires on July 29, 2009; and
22 (6) in the event that the Court does not approve the assumption
23 and assignment of the Parking Lot Lease and the waiver of the 10-
24 day stay period, cause exists to extend the time for such
25 assumption and assignment for 90 days from July 29, 2009 to and
26 including October 27, 2009.

27 This Motion is based upon the Notice of Motion, this Motion,
28 the Memorandum of Points and Authorities and Declarations of

-3-

340491.1 [XP]    25210

1 | Matthew F. Kennedy and David Kegaries, all papers and pleadings on

2 | file herein, and such other evidence that may be presented at the

3 | hearing.

4 | Dated: July 17, 2009      DANNING, GILL, DIAMOND & KOLLITZ, LLP

By: _____
ROBERT A. HESSLING
Proposed Counsel for
Amy L. Goldman,
Chapter 7 Trustee

-4-

# MEMORANDUM OF POINTS AND AUTHORITIES

I.

## INTRODUCTION

Amy L. Goldman, Chapter 7 Trustee ("Trustee") of the estate of Brockman Building Lofts, LLC ("Debtor"), seeks Court authorization pursuant to 11 U.S.C. § 365(d)(4) to assume a Lease Agreement (Residential Parking Usage Only) ("Parking Lot Lease") dated December 4, 2003 between Thermo Grand Avenue, L.L.C. ("Thermo Grand"), as lessor, and the Debtor, as lessee, and assign the Parking Lot Lease to the nominee of Bank of America, N.A. ("Bank"), the construction lender under a loan evidenced by one or more promissory notes, deeds of trust and related documents ("Loan Documents"). The nominee will be an existing affiliate of the Bank or a new company to be formed and capitalized by the Bank ("Nominee"). The Court previously authorized the Trustee to: (1) operate the Debtor's business and real property consisting of a 12-story building located at 520 West Seventh St., Los Angeles, California ("Property") on a limited basis; (2) obtain credit from the Bank, which is the beneficiary of a promissory note and a trust deed affecting the Property, in accordance with the terms of an Agreement Re Credit, Business Operations, And Parking Lot Lease ("Agreement"); and (3) use the credit to pay the Trustee's Expenses of Administration, as defined in the Agreement. With respect to the Parking Lot Lease, the Agreement provides, among other things, that at the Bank's sole option and as additional consideration for the Bank's providing of credit and to preserve the Parking Lot Lease and enable the Bank or any purchaser of the Property to later obtain the issuance of a final certificate of

-5-

occupancy ("FCO") for the Property, the Trustee shall seek to assume and assign the Parking Lot Lease to the Bank or its nominee, provided that the Bank informs the Trustee in writing that it elects to exercise such option of assumption and assignment.  The Bank has elected such option of assumption and assignment of the Parking Lot Lease to its Nominee, for further assignment to and assumption by a condominium owner's association for the Property, to be created by the Nominee.

The assumption of the Parking Lot Lease and the assignment of the Parking Lot Lease to the Bank's Nominee are necessary to preserve the rights under the Parking Lot Lease, which is in turn is necessary for the acquisition of a FCO relative to the Property.  The Parking Lot Lease provides, among other things, that the lessee's rights under the Agreement shall be assigned to an owners' association, which will be established pursuant to applicable law and must expressly assume all of the lessee's obligations under the Parking Lot Lease.  The Bank intends either to use an existing affiliate or to form and capitalize a new company, which will be its Nominee that will: (1) obtain the assignments of the Bank's rights, title and interests under the Loan Documents encumbering the Property; (2) seek to foreclose under the trust deed and other Loan Documents affecting the Property; (3) establish a condominium owners' association for the units of the Property pursuant to applicable law; and (4) if the assumption, and the assignment of the Parking Lot Lease to the Nominee, are approved, cause the Nominee to expressly assume all of the lessee's obligations under the Parking Lot Lease, for further assignment to the owners' association, in order to insure,

-6-

1 | as required by the Parking Lot Lease, that the parking spaces will
2 | be included in the common area of the Property.

3 |     The Trustee also seeks an order waiving the 10-day stay
4 | period under Rule 6006(d) regarding the order relative to the
5 | assumption and assignment. The waiver is necessary because the
6 | 120-day period for assumption and assignment expires on July 29,
7 | 2009.

8 |     Alternatively, in the event that the Court does not approve
9 | the assumption and assignment of the Parking Lot Lease and the
10 | waiver of the 10-day stay period, the Trustee seeks an order
11 | extending the time for the Trustee to assume and assign the
12 | Parking Lot Lease for 90 days from July 29, 2009 to and including
13 | October 27, 2009. Cause exists for such an extension. The
14 | Parking Lot Lease and this case are unusual. The Parking Lot
15 | Lease requires that the rights under the Parking Lot Lease be
16 | assigned to an owners' association to be established with respect
17 | to the Property. The Trustee needs to preserve the rights under
18 | the Parking Lot Lease, which in turn is necessary for the use of
19 | the residents of visitors to the Property and for the acquisition
20 | of the FCO relative to the Property. The term of the Parking Lot
21 | Lease, and the payment of rent under the Parking Lot Lease, do not
22 | begin until the FCO for the Property is acquired.

23 |     This case is relatively young, having been filed on April 1,
24 | 2009. The term of the Parking Lot Lease has not yet commenced
25 | and, therefore, Thermo Grand is not burdened by the delay in
26 | assumption, in that Thermo Grand presently has unfettered use of
27 | the parking spaces covered by the Parking Lot Lease.
28 | ///

-7-

II.

STATEMENT OF FACTS

1.    The Bank is the pre-petition construction lender to the Debtor.    In connection therewith, the Bank is the beneficiary of a promissory note, a trust deed and other loan documents ("Loan Documents") affecting the Property.    The construction financed by the Bank has only recently been substantially completed.    A temporary certificate of occupancy has been issued, but the FCO will not be issued until certain items are attended to, including resolution of building parking issues.

2.    On December 4, 2003, Thermo Grand, as lessor, and the Debtor, as lessee, entered into the Parking Lot Lease, whereby the Debtor leased about 51 parking spaces in a separate parking lot adjoining the Property to supplement the parking available in the basement of the Property.    The term of the Parking Lot Lease commences on the first day of the month after the receipt of a FCO for the Property.    Because the FCO has not yet be issued, the term of the Lease has not commenced and Thermo Grand therefore has possession of and access to the 51 spaces, unburdened by the as-of-yet uncommenced lease.

3.    Paragraph 1.2(a) of the Parking Lot Lease provides, among other things, that:

Lessee shall assign its rights under the Agreement to an owners association which will be established pursuant to applicable law in conjunction with the Project, upon the express condition that the Premises shall be included in the common area of the Project and be used exclusively for private, non-public parking of motor vehicles by purchasers

-8-

340491.1 [XP]    25210

1    and owners of the units of the Project, their gratuitous

2    licensees, invitees and guests, and no others. In connection

3    with assignment of this Agreement, the owners association

4    must expressly assume all of Lessee's obligations hereunder.

5    4.    On April 1, 2009, the Debtor filed a voluntary

6  Chapter 7 petition. Amy Goldman was appointed as the Chapter 7

7  Trustee, and is the duly acting and qualified Chapter 7 Trustee.

8  The property of the estate includes, among other property, the

9  Property.

10    5.    The Property includes, among other things, a

11  retail/commercial unit that is located on the Property's ground

12  floor and is currently leased to BHFC Operating, LLC ("BHFC").

13  BHFC operates an upscale casual restaurant, bar and gourmet food

14  market known as Bottega Louie ("Restaurant"). The Restaurant

15  opened on April 9, 2009, and currently employs about 200

16  employees, who work breakfast, lunch and dinner shifts.

17    6.    The business and the Property are presently operating

18  under a Temporary Certificate of Occupancy ("TCO"), which has been

19  extended and is presently set to expire on November 12, 2009.

20    7.    The Trustee and the Bank previously entered into the

21  Agreement, which sets forth the terms for the Trustee's operations

22  of the Debtor's business and the Property, the incurrence of

23  credit and the use of such credit to pay the Trustee's Expenses of

24  Administration, as defined in the Agreement, and the Trustee's

25  assumption, and assignment to the Bank or its nominee, of the

26  Parking Lot Lease. With respect to the Parking Lot Lease,

27  paragraph 12 of the Agreement provides that:

28  ///

-9-

## 12. Assumption and Assignment of Right, Title and Interest Under Parking Lot Lease

At the Bank's sole option and as additional consideration for the Bank's providing of credit and to preserve the Parking Lot Lease and enable the Bank or any purchaser of the Property to later obtain the issuance of a FCO for the Property, the Trustee shall seek to assume and assign all of her right, title and interest under the Parking Lot Lease to the Bank or its nominee, provided that the Bank informs the Trustee in writing that it elects to exercise such option of assumption and assignment. If the Bank elects such option of assumption and assignment, the Trustee shall promptly thereafter file a motion with the Bankruptcy Court seeking approval of such assumption and assignment, provided that the transaction contemplated will protect the trustee and the estate from liabilities under the assumed lease. At the Bank's election, the Trustee shall, upon receipt of written notice of such election withdraw the motion for assumption and assignment, at any time prior to the Court's ruling on the motion.

8. Pursuant to the Trustee's motion, which was granted by the Court at a hearing on July 2, 2009, the Court previously authorized the Trustee to operate the Debtor's business and the Property on a limited basis, obtain credit from the Bank in accordance with the terms of an Agreement Re Credit, Business Operations, And Parking Lot Lease ("Agreement"), and use the credit to pay the Trustee's Expenses of Administration, as defined

///

-10-

1 in the Agreement. An order approving the motion was entered on
2 July 15, 2009.

3    9.   The 120-day period for the assumption and assignment of
4 the Parking Lot Lease expires on July 29, 2009.

5    10.  As indicated by the attached Declaration of David
6 Kegaries, who is a Senior Vice President of the Bank, the Bank
7 intends to use either an existing affiliate of the Bank or to form
8 and capitalize a new company, which will be the Nominee that will:
9 (a) obtain the assignments of the Bank's rights, title and
10 interests under the Loan Documents relating to the Property;
11 (b) seek to foreclose under the trust deed affecting the Property;
12 (c) establish a condominium owners' association with respect to
13 the Property pursuant to applicable law; and (d) if the
14 assumption, and the assignment of the Parking Lot Lease to the
15 Nominee, are approved, cause the Nominee to expressly assume all
16 of the lessee's obligations under the Parking Lot Lease, for
17 further assignment to the owners' association, in order to insure,
18 as required by the Parking Lot Lease, that the parking spaces will
19 be included in the common area of the Property.

20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

-11-

III.

ARGUMENT

A.   The Trustee Should Be Authorized To Assume, And Assign
     To The Bank's Nominee, The Parking Lot Lease Because
     Such Assumption And Assignment Are Necessary To Preserve
     The Rights Under The Parking Lot Lease, And Such Lease
     Is Necessary For The Acquisition Of The FCO Relative To
     The Property.

Section 365 governs the assumption, rejection and assignment of executory contracts and unexpired leases.  Section 365(a) provides that with certain exceptions that are not applicable here, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

Section 365(b)(1) provides that if there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee satisfies the conditions in sections 365(b)(1)(A) through (c), including without limitation adequate assurance of future performance.

Section 365(b)(2) provides in relevant part that section 365(b)(1) does not apply to a default that is a breach of a provision relating to the commencement of a case under Title 11.

Section 365(d)(1)(A) provides that subject to section 365(d)(4)(B) dealing with the extension of the period under section 365(d)(1)(A), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does

-12-

1 not assume or reject the unexpired lease by the earlier of:
 2 (1) the date that is 120 days after the date of the order for
 3 relief; or (2) the date of the entry of an order confirming a
 4 plan.

 5    Section 365(d)(4) provides that subject to section
 6 365(d)(4)(B), an unexpired lease of nonresidential real property
 7 under which the debtor is lessee shall be deemed rejected, and the
 8 trustee shall immediately surrender that nonresidential real
 9 property to the lessor, if the trustee does not assume or reject
10 the unexpired lease by the earlier of: (1) the date that is 120
11 days after the order for relief; or (2) the date of the entry of
12 an order confirming the plan.

13    Section 365(f)(1) provides that with certain exceptions under
14 sections 365(b) and (c), which are not applicable here,
15 notwithstanding a provision in an executory contract or unexpired
16 lease of the debtor, or in applicable law, that prohibits,
17 restricts, or conditions that assignment of such contract or
18 lease, the trustee may assign such contract or lease under section
19 365(f)(2).

20    Section 365(f)(2) provides that the trustee may assign an
21 executory contract or unexpired lease of the debtor only if the
22 trustee assumes such contract or lease in accordance with the
23 provisions of section 365 and adequate assurance of future
24 performance by the assignee of such contract or lease is provided,
25 whether or not there has been a default in such contract or lease.

26    The Trustee should be authorized to assume, and assign to the
27 Bank's Nominee, the Parking Lot Lease.  The 120-day period under
28 section 365(d)(4) within which to assume or reject the

-13-

1 nonresidential lease has not expired.  Although the Parking Lot
2 Lease provides that a default occurs if the Debtor becomes a
3 debtor as defined in Title 11, section 365(d)(2) provides that
4 section 365(b)(1) does not apply to a default that is a breach of
5 a provision relating to the commencement of a case under Title 11.

6     The Court previously authorized the Trustee to operate the
7 Debtor's business and the Property on a limited basis, obtain
8 credit from the Bank in accordance with the terms of the
9 Agreement, and use the credit to pay the Trustee's Expenses of
10 Administration, as defined in the Agreement.  With respect to the
11 Parking Lot Lease, the Agreement provides, among other things,
12 that at the Bank's sole option and as additional consideration for
13 the Bank's providing of credit and to preserve the Parking Lot
14 Lease and enable the Bank or any purchaser of the Property to
15 later obtain the issuance of an FCO for the Property, the Trustee
16 shall seek to assume and assign the Parking Lot Lease to the Bank
17 or its nominee, provided that the Bank informs the Trustee in
18 writing that it elects to exercise such option of assumption and
19 assignment.  The Bank has elected such option of assumption of the
20 Parking Lot Lease and the assignment of the Parking Lot Lease to
21 the Bank's Nominee.

22     The assumption of the Parking Lot Lease and the assignment of
23 the Parking Lot Lease to the Bank's Nominee are necessary to
24 preserve the rights under the Parking Lot Lease, which is in turn
25 is necessary for the acquisition of a FCO relative to the Property
26 and the satisfaction of the parking needs of future residents of
27 the Property.  The Parking Lot Lease provides, among other things,
28 that the lessee's rights under the Agreement shall be assigned to

-14-

an owners' association, which will be established pursuant to applicable law and must expressly assume all of the lessee's obligations under the Parking Lot Lease. As indicated by the attached declaration of David Kegaries, the Bank intends to form and capitalize a new company, which will be the Nominee that will: (1) obtain the assignments of the Bank's rights, title and interests under the note and trust deed securing the note with respect to the Property; (2) seek to foreclose under the trust deed affecting the Property; (3) establish a condominium owners' association with respect to the Property pursuant to applicable law; and (4) if the assumption, and the assignment of the Parking Lot Lease to the Nominee, are approved, cause the Nominee to expressly assume all of the lessee's obligations under the Parking Lot Lease, for further assignment to the owners' association, in order to insure, as required by the Parking Lot Lease, that the parking spaces will be included in the common area of the Property.

B.  The 10-Day Stay Period Under Rule 6006(d) Should Be Waived.

Rule 6006(d) provides that an order authorizing the trustee to assign an executory contract or unexpired lease under section 365(f) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise.

///
///
///
///

-15-

C.  The 10-day stay period under Rule 6006(d) should be
    waived.  The 120-day period for assumption and
    assignment expires on July 29, 2009.  The waiver is
    necessary because the 120-day period for assumption and
    assignment expires on July 29, 2009.  In The Event That
    The Court Does Not Approve The Assignment And Assumption
    Of The Parking Lot Lease And The Waiver Of The 10-Day
    Stay Period, The Time For Such Assumption And Assignment
    Should Be Extended For 90 Days From July 29, 2009 To And
    Including October 27, 2009.

Section 365(d)(4)(B)(i) provides in relevant part that the court may extend the 120-day period under section 365(d)(4)(A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.

Although the Bankruptcy Code does not provide a definition of cause for the extension of time within which to assume or reject an unexpired lease of nonresidential real property, a list of relevant factors was developed in In re Wedtech Corporation, 72 B.R. 464 (Bankr. S.D.N.Y. 1987).  In In re Victoria Station, Inc., 88 B.R. 231, 236 n. 7 (9th Cir. BAP 1988), aff'd 875 F.2d 1380 (1989), the Court noted that as set forth in Wedtech, there are a number of important factors in support of and against an extension of time under section 365(d)(4).  The Wedtech factors are:

1.  whether the lease is a primary asset of the debtor;
2.  whether the lessor has a reversionary interest in the building built by the debtor on the landlord's land;

-16-

1       3.   whether the debtor has had time to intelligently

2               appraise its financial situation and potential

3               value of its assets in terms of the formulation of

4               a plan;

5       4.   whether the lessor continues to receive rental

6               payments and whether the debtor fails to pay rent

7               reserved in the lease;

8       5.   whether the lessor will be damaged beyond

9               compensation available under the Bankruptcy Code

10              due to the debtor's continued occupation;

11      6.   whether the case is exceptionally complex and

12              involves a large number of leases;

13      7.   whether need exists for judicial determination of

14              whether the lease is a disguised security

15              agreement;

16      8.   whether the debtor has failed or is unable to

17              formulate a plan when it has had more than enough

18              time to do so; and

19      9.   any other factors bearing on whether the debtor has

20              had a reasonable amount of time to decide to assume

21              or reject the lease.

22     In the event that the Court does not approve the assumption

23 and assignment of the Parking Lot Lease and the waiver of the 10-

24 day stay period, the time for the Trustee to assume and assign the

25 Parking Lot Lease should be extended for 90 days from July 29,

26 2009 to and including October 27, 2009. Cause exists for such an

27 extension. The Parking Lot Lease and this case are unusual. The

28 Parking Lot Lease requires that the rights under the Parking Lot

-17-

1 | Lease be assigned to an owners' association to be established with
2 | respect to the Property. The Trustee needs to preserve the rights
3 | under the Parking Lot Lease, which in turn is necessary for the
4 | acquisition of the FCO relative to the Property. The term of the
5 | Parking Lot Lease, and the payment of rent under the Parking Lot
6 | Lease, do not begin until the FCO for the Property is acquired.
7 | This case is relatively young, having been filed on April 1, 2009.
8 | In the meanwhile, Thermo Grand has complete possession and control
9 | of the parking spaces, and therefore will not be damaged by any
10 | delay.

11 |

12 | IV.

13 | CONCLUSION

14 | Based upon the above reasons, the Trustee respectfully
15 | requests that the Court enter an order: (1) authorizing the
16 | Trustee to assume, and assign to the Nominee, the Parking Lot
17 | Lease with the right and obligation for further assignment by the
18 | Nominee of the Parking Lot Lease to a condominium owners'
19 | association to be formed by the Nominee, as contemplated by the
20 | Parking Lot Lease, and waiving the 10-day stay period under Rule
21 | 6006(d); (2) in the alternative, in the event that the Court does
22 | not approve the assumption and assignment of the Parking Lot Lease
23 | and the waiver of the 10-day stay period, extending the time for
24 | the Trustee to assume and assign the Parking Lot Lease for
25 | 90 days from July 29, 2009 to and including October 27, 2009; and
26 | ///
27 | ///
28 | ///

-18-

1 | (3) granting such other and further relief that may be just and
2 | proper.
3 | Dated: July 17, 2009          DANNING, GILL, DIAMOND & KOLLITZ, LLP
4 |
5 |                              By: _____
6 |                                  ROBERT A. HESSLING
                                     Proposed Counsel for
7 |                                  Amy Goldman,
                                     Chapter 7 Trustee
8 |
9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

-19-

# DECLARATION OF MATTHEW F. KENNEDY

I, Matthew F. Kennedy, declare as follows:

1. I am a member of the Bar of this Court and an associate of Danning, Gill, Diamond & Kollitz, LLP, the proposed general counsel for Amy Goldman, the Chapter 7 Trustee ("Trustee") of the estate of Brockman Building Lofts, Inc. ("Debtor").

2. I have personal knowledge of the facts in this declaration and, if called as a witness, I could testify competently to these facts.

3. On April 1, 2009, the Debtor filed a voluntary Chapter 7 petition. Amy Goldman was later appointed as the Chapter 7 Trustee.

4. On the Trustee's behalf, I filed a Motion For Order Authorizing Trustee To:(1) Operate Debtor's Business And Property; (2) Incur And Use Credit; And (3) Pay Fees and Expenses of Business Manager on a Monthly Basis ("Operating Motion"). A copy of the Operating Motion is attached as Exhibit "1." A copy of a Lease Agreement (Residential Parking Usage Only) dated December 4, 2003 between Thermo Grand Avenue, L.L.C., as lessor, and the Debtor, as lessee, is attached as Exhibit "1" to the Trustee's declaration in support of the Operating Motion.

///
///
///
///
///
///
///

-20-

1    5.   By an order entered on July 15, 2009, the Court granted

2   the Operating Motion.  A copy of the order is attached as

3   Exhibit "2."

4        I declare under penalty of perjury that the foregoing is true

5   and correct.

6        Executed on July 16, 2009 at Los Angeles, California.

7

8                                          _____

9                              MATTHEW F. KENNEDY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              -21-

## DECLARATION OF DAVID KEGARIES

I, David Kegaries, declare as follows:

1.    I am a Senior Vice President of Bank of America, N.A. ("Bank").

2.    I have personal knowledge of the facts in this declaration, except those matters that are based upon information and belief, and as to those matters I believe that such matters are true.  If called as a witness, I could testify competently to these facts.

3.    The Bank is the beneficiary under a promissory note secured by a deed of trust affecting real property consisting of a 12-story building located at 520 West Seventh St., Los Angeles, California ("Property").  The Property is the property of the bankruptcy estate of Brockman Building Lofts, LLC ("Debtor").

4.    The Bank has elected the option of, and desires: (a) the assumption by Amy L. Goldman, Chapter 7 Trustee ("Trustee") of the Debtor's estate, of a Lease Agreement (Residential Parking Usage Only) ("Parking Lot Lease") dated December 4, 2003 between Thermo Grand Avenue, L.L.C. ("Thermo Grand"), as lessor, and the Debtor, as lessee; and (b) the Trustee's assignment of the Parking Lot Lease to the Bank's nominee.

5.    I have recommended to the credit administration of the Bank and have received preliminary indications that I will receive formal approval of the following transactions: using either an existing affiliate of the Bank or a new entity to be formed as an affiliate of the Bank ("Nominee"), (a) the Bank will assign to the Nominee all of the Bank's rights, title and interests under the

-22-

1  note and trust deed and other loan documents ("Loan Documents")
2  securing the note with respect to the Property; (b) the Nominee
3  will seek to foreclose under the trust deed affecting the
4  Property; (c) the Nominee will establish a condominium owners'
5  association with respect to the Property pursuant to applicable
6  law; and (d) if the assumption, and the assignment of the Parking
7  Lot Lease to the Nominee, are approved, the Bank will cause the
8  Nominee to expressly assume all of the lessee's obligations under
9  the Parking Lot Lease, for further assignment to the owners'
10 association, in order to insure, as required by the Parking Lot
11 Lease, that the parking spaces will be included in the common area
12 of the Property.

13    6.    I am informed and believe that the Parking Lot Lease is
14 necessary for the acquisition of a final certificate of occupancy
15 for the Property and that the parking spaces covered by the
16 Parking Lot Lease are necessary to provide adequate parking to the
17 future residents of the Property.

18    I declare under penalty of perjury that the foregoing is true
19 and correct.

20    Executed on July __, 2009 at Los Angeles, California.

21

22                                    _____
23                                    DAVID KEGARIES

24

25

26

27

28

                              -23-

EXHIBIT "1"

1 | ROBERT A. HESSLING [State Bar No. 096466]
rhessling@dgdk.com
2 | MATTHEW F. KENNEDY [State Bar No. 199485]
mkennedy@dgdk.com
3 | DANNING, GILL, DIAMOND & KOLLITZ, LLP
2029 Century Park East, Third Floor
4 | Los Angeles, California 90067
Telephone: 310-277-0077
5 | Facsimile: 310-277-5735

6 | Proposed Counsel for
Amy L. Goldman,
7 | Chapter 7 Trustee

ELECTRONICALLY
FILED:
Date: 6/26/09
Docket No: 20

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **SAN FERNANDO VALLEY DIVISION**

11 | In re ) Case No. 1:09-13713-KT
)
12 | BROCKMAN BUILDING LOFTS, LLC, ) Chapter 7
)
13 |        Debtor. ) **MOTION OF TRUSTEE FOR ORDER**
) **AUTHORIZING TRUSTEE TO:**
14 | ) **(1) OPERATE DEBTOR'S BUSINESS**
) **AND PROPERTY; (2) INCUR AND**
15 | ) **USE CREDIT; AND (3) PAY FEES**
) **AND EXPENSES OF BUSINESS**
16 | ) **MANAGER ON A MONTHLY BASIS;**
) **AND MEMORANDUM OF POINTS AND**
17 | ) **AUTHORITIES AND DECLARATION OF**
) **AMY L. GOLDMAN**
18 | )
) Date: [To Be Set]
19 | ) Time: [To Be Set[
) Place: Courtroom "301"
20 | )      21041 Burbank Blvd.
)      Woodland Hills, CA
21 | _____ )

22 | ///

23 | ///

24 | ///

25 | ///

26 | ///

27 | ///

28 | ///

024     1     **EXHIBIT**    **1**

339518.02 [XP] 25210

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................... 4

I.    INTRODUCTION ............................................. 4

II.   STATEMENT OF FACTS ....................................... 8

III.  ARGUMENT ................................................ 12

    A.    The Trustee's Operations Of The Debtor's
        Business And The Property On A Limited Basis,
        And The Acquisition And Use Of Credit To Pay
        The Operating Expenses, Are Consistent With
        And Will Foster Public Policy And Prevent The
        Loss Of Employment And The Concomitant
        Hardships For About 200 People. .................... 12

    B.    The Trustee Should Be Authorized To Pay The
        Fees And Expenses On A Monthly Basis Up To The
        Aggregate Monthly Sum Of $8,000 Of Roelke As
        The Trustee's Business Manager. ................... 15

IV.   CONCLUSION .............................................. 16

DECLARATION OF AMY L. GOLDMAN ................................ 17

339518.02 [XP] 25210

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

In re Drexel Burnham Lambert Group, Inc.,
138 B.R. 723 (Bankr. S.D.N.Y. 1992) .......................12

In re Engstrom,
33 B.R. 369 (Bankr. D.S.D. 1983) ..........................12

In re Heissinger Resources, Ltd.,
67 B.R. 378 (C.D. Ill. 1986) .............................12

NLRB v. Bildisco and Bildisco,
465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) .......13

## Statutes

11 United States Code,

    Section 328 ......................................2, 7, 15
    Section 364 ..............................................13
    Section 364(a) ...........................................13
    Section 364(d)(1) ........................................13
    Section 365 ..............................................2
    Section 503(b)(1) ........................................13
    Section 721 ......................................2, 12, 13

## Rules

Local Bankruptcy Rules,
    Rule 9013-1 ..............................................2

## Other Authorities

United States Department of Justice, Handbook for
    Chapter 7 Trustees,
    p. 8-15 (2008) ..........................................13

339518.02 [XP] 25210

1   Amy L. Goldman, Chapter 7 Trustee ("Trustee") of the estate

2   of Brockman Building Lofts, LLC ("Debtor"), moves the Court

3   pursuant to Local Bankruptcy Rule 9013-1 and the Bankruptcy Code

4   sections below for an order authorizing the Trustee to:

5       1.   pursuant to 11 U.S.C. § 721, operate the Debtor's

6   business and the real property consisting of a 12-story building

7   located at 520 West Seventh St., Los Angeles, California

8   ("Property") on a limited basis from and after the date of the

9   entry of an order approving the motion to operate and the motion

10  to obtain and use credit up to and including December 31, 2009;

11      2.   pursuant to 11 U.S.C. § 365, obtain credit from Bank of

12  America, N.A. ("Bank") in accordance with the terms of an

13  Agreement Re Credit, Business Operations, And Parking Lot Lease

14  ("Agreement") and use such credit to pay the Trustee's Expenses of

15  Administration, including without limitation the operating

16  expenses within the limits of the proposed budget that is attached

17  as Exhibit "1" to the Agreement; and

18      3.   pursuant to 11 U.S.C. § 328, pay the fees and costs on a

19  monthly basis and up to the aggregate monthly sum of $8,000 of

20  Kenneth B. Roelke & Associates, Inc. ("Roelke"), which is the

21  Trustee's proposed business manager, subject to Roelke's filing of

22  a final fee application upon the closing of the case or the

23  conclusion of Roelke's services.

24      This Motion is made on the grounds that the Trustee's

25  operations of the business and the Property on a limited basis,

26  and the acquisition and use of such credit to pay the Trustee's

27  Expenses of Administration, including without limitation the

28  operating expenses, are consistent with and will foster public

2

027

1 | policy by enabling one of the tenants, BHFC Operating, LLC, to
2 | continue operating an upscale restaurant, bar and gourmet food
3 | market known as Bottega Louie ("Restaurant") on the Property's
4 | ground floor and thereby enable the Restaurant to remain viable
5 | and preserve, and prevent the loss of, the employment of about 200
6 | employees.

7 |     This Motion is based upon the Notice of Motion, this Motion,
8 | the Memorandum of Points and Authorities and Declaration of
9 | Amy L. Goldman, all papers and pleadings on file herein, and such
10 | other evidence that may be presented at the hearing.

11 |

12 | Dated: June 16, 2009     DANNING, GILL, DIAMOND & KOLLITZ, LLP

13 |

14 |

15 |     By: _____
    MATTHEW P. KENNEDY

16 |     Proposed Counsel for
    Amy L. Goldman,

17 |     Chapter 7 Trustee

3

339518.02 [XP] 25210

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Amy L. Goldman, Chapter 7 Trustee ("Applicant") of the estate of Brockman Building Lofts, LLC ("Debtor"), seeks Court authorization to: (1) operate the Debtor's business and the real property consisting of a 12-story building located at 520 West Seventh St., Los Angeles, California ("Property") on a limited basis from and after the date of the entry of an order approving the motion to operate and the motion to obtain credit ("Commencement Date") up to and including December 31, 2009; and (2) obtain credit from the Bank of America, N.A. ("Bank") in accordance with the terms of an Agreement Re Credit, Business Operations, And Parking Lot Lease ("Agreement") and use the credit to pay the Trustee's Expenses of Administration, including without limitation the operating expenses within the limits of the proposed budget that is attached as Exhibit "1" to the Agreement ("Proposed Budget"). The Property includes, among other things, a retail/commercial unit that is located on the Property's ground floor and is currently leased to BHFC Operating, LLC ("BHFC"). BHFC operates an upscale casual restaurant, bar and gourmet food market known as Bottega Louie ("Restaurant"). The Restaurant opened on April 9, 2009, and currently employs about 200 employees, who work breakfast, lunch and dinner shifts.

With respect to the limited business operations, the Agreement provides, among other things, that:

1. with certain exceptions, the Trustee shall operate the Debtor's business and the Property from and after the

1 Commencement Date for 90 days or until such date on which the
2 Property is sold at a trustee's sale conducted under the Bank's
3 deed of trust affecting the Property, whichever period is sooner;[1]

4          2.    the Trustee shall pay the operating expenses in
5 accordance with the Proposed Budget; and

6          3.    unless mutually agreed otherwise by the Trustee and
7 the Bank, the business operations shall be limited to those
8 operations that are reasonable and necessary to maintain, preserve
9 and protect the Property in its present condition and ensure the
10 continued Restaurant operations.

11     The operations of the Property require generally:
12 (1) utilities, which consist of electricity, gas, water, waste
13 removal, and telephone; (2) the maintenance, operation and
14 monitoring of fire, smoke and other safety monitoring devices
15 (some of which may operate using telephone or internet connections
16 to remote monitoring services) in order to comply with building
17 codes and other applicable non-bankruptcy law; and (3) ongoing
18 maintenance and trouble service for the building elevators in
19 order to comply with building and safety laws and facilitate
20 certain Restaurant operations.  In addition, security services for
21 24 hours a day and seven days a week may be required to secure the
22 Property as a result of the configuration of the Property and the

23
24 [1] The Trustee is requesting that the Court authorize the Trustee
    to operate the Debtor's business and Property up to and including
25 December 31, 2009 to obviate the filing of another motion in the
    events that the foreclosure proceedings are not held within the
    initial 90-day operating period and the Trustee and the Bank later
26 mutually agree that the Trustee shall continue to operate the
    business and the Property beyond this initial 90-day operating
27 period.

28

5

339518.02 [XP] 25210

1 need to maintain ingress and egress for customers, workers, and
2 vendors involved in the Restaurant operations.  In particular,
3 because it may not be possible to permanently close-off access to
4 the residential areas of the Property without interfering with the
5 Restaurant operations, security for the residential areas and the
6 building may not be able to be provided generally without the
7 retention of a private security service.

8     The business of the Property is presently operating under a
9 Temporary Certificate of Occupancy ("TCO"), which has been
10 extended and is presently set to expire on November 12, 2009.

11     With respect to the incurrence of credit, the Agreement
12 provides, among other things, that:

13     1.   with certain exceptions, the Bank shall provide and
14 pay credit up to the sum that is equal to the Trustee's Expenses
15 of Administration, as defined in the Agreement, as follows:

16     a.   the sum of $100,000 upon the later of the
17 Commencement Date or the date of the execution and delivery of the
18 Agreement by the Bank and its counsel;

19     b.   an additional sum of $50,000 not later than
20 the 60th day after the Commencement Date;

21     c.   an additional sum of $100,000 not later than
22 the 90th day after the Commencement Date; and

23     d.   with certain exceptions, if and to the extent
24 that the Trustee determines after the cessation of business
25 operations that the prior credit of $250,000 is not sufficient to
26 pay in full the Trustee's Expenses of Administration, such
27 additional amount that the Trustee determines is needed to pay in
28 full all of the Trustee's Expenses of Administration; and

6

1      2.     the Bank's payments of any and all post-petition
2  expenses with respect to the Property, and all credit that the
3  Bank provides to the Trustee under the Agreement, shall constitute
4  protective advances under its trust deed affecting the Property,
5  and shall have senior lien priority with respect to the Property
6  and its proceeds; and

7      3.     the Bank shall also have a first priority lien
8  encumbering any funds that have been provided to the Trustee under
9  the Agreement but have not been expended by the Trustee to pay the
10 Trustee's Expenses of Administration

11     The Trustee's operations of the Debtor's business and the
12 Property on a limited basis, and the acquisition and use of such
13 credit to pay the Trustee's Expenses of Administration, including
14 without limitation the operating expenses within the limits of the
15 Proposed Budget, are consistent with and will foster public
16 policy.  Pursuant to the Agreement, the Bank has agreed to provide
17 the necessary credit to pay the Expenses of Administration,
18 including without limitation the operating expenses within the
19 limits of the Proposed Budget.  The business operations will
20 enable BHFC to continue operating the Restaurant and thereby
21 enable the Restaurant to: (1) remain viable; (2) preserve, and
22 prevent the loss of, the employment of about 200 employees; and
23 (3) avoid the hardships to the employees that would arise from the
24 loss of such employment, particularly during these difficult
25 economic times.

26     The Trustee also seeks Court authorization pursuant to
27 11 U.S.C. § 328 to pay the fees and costs on a monthly basis and
28 up to the aggregate monthly sum of $8,000 of Kenneth B. Roelke &

                              032        7

Associates, Inc. ("Roelke"), which is the Trustee's proposed business manager, subject to Roelke's filing of a final fee application upon the closing of the case or the conclusion of Roelke's services. Roelke's services as the business manager are reasonable and necessary to operate the business and the Property.

## II.

## STATEMENT OF FACTS

1. In or about late April or early May 2007, Countrywide Bank ("Countrywide"), as the predecessor-in-interest to the Bank, made a pre-petition loan of up to the principal sum of $35,000,000 to the Debtor, and the Debtor executed a pre-petition promissory note up to that principal amount in Countrywide's favor. The obligation evidenced by the promissory note is secured by a Master Construction Deed of Trust and a Supplemental Construction Deed of Trust (collectively, the "Master Trust Deed"), both of which were recorded on May 17, 2007 as Instrument Nos. 07-71201022 and 07-71201023, respectively, in the office of the Los Angeles County Recorder. The Master Trust Deed affects the Property.

2. The Property consists of: (a) about 80 vacant units that the Debtor physically and legally converted into residential condominium units to be offered for sale; (b) a basement parking area; and (c) a retail/commercial unit that is located on the Property's ground floor and is currently leased to BHFC. BHFC operates the Restaurant, which opened on April 9, 2009, and currently employs about 200 employees, who work breakfast, lunch and dinner shifts. The employees include cooks and kitchen workers, whose shifts together are around the clock and include an

8

1 overnight shift that prepares baked goods and other items for next
2 day consumption and service.

3    3.    The operations of the business and the Property require
4 generally: (a) utilities, which consist of electricity, gas,
5 water, waste removal, and telephone; (b) the maintenance,
6 operation and monitoring of fire, smoke and other safety
7 monitoring devices (some of which may operate using telephone or
8 internet connections to remote monitoring services) in order to
9 comply with building codes and other applicable non-bankruptcy
10 law; and (c) ongoing maintenance and trouble service for the
11 building elevators in order to comply with building and safety
12 laws and facilitate certain Restaurant operations.    In addition,
13 security services for 24 hours a day and seven days a week may be
14 required to secure the Property as a result of the configuration
15 of the Property and the need to maintain ingress and egress for
16 customers, workers, and vendors involved in the Restaurant
17 operations.    In particular, because it may not be possible to
18 permanently close-off access to the residential areas of the
19 Property without interfering with the Restaurant operations,
20 security for the residential areas and the building may not be
21 able to be provided generally without the retention of a private
22 security service.

23    4.    The business and the Property are presently operating
24 under a Temporary Certificate of Occupancy ("TCO"), which has been
25 extended and is presently set to expire on November 12, 2009.

26    5.    On December 4, 2003, Thermo Grand Avenue, L.L.C., as
27 lessor, and the Debtor, as lessee, entered into the Parking Lot
28 Lease, whereby the Debtor leased about 51 parking spaces in a

9

1 separate parking lot adjoining the Property to supplement the
2 parking available in the basement of the Property. The term of
3 the Parking Lot Lease commences on the first day of the month
4 after the receipt of a FCO for the Property.

5     6. The Bank commenced pre-petition non-judicial foreclosure
6 proceedings under its Master Deed of Trust by recording one or
7 more Notices of Default with respect to the Property.

8     7. On April 1, 2009, the Debtor filed a voluntary
9 Chapter 7 petition. Amy L. Goldman was appointed as the Chapter 7
10 Trustee, and is the duly acting and qualified Chapter 7 Trustee.

11     8. In its Schedule "A," the Debtor lists the Property with
12 a fair market value of $20,000,000 and secured claims in the total
13 sum of $39,204,567.94 affecting the Property.

14     9. In its Schedule "D," the Debtor lists the Bank's lien of
15 $34,390,193.00 and mechanics' liens in the aggregate sum of
16 $4,814,374.00 affecting the Property.

17     10. In its Schedule "E," the Debtor lists unsecured priority
18 claims for Property taxes of $369,933.00 owing to the Los Angeles
19 City Office of Finance and 2009 taxes of $800 owing to the
20 Franchise Tax Board.

21     11. In its Schedule "F," the Debtor lists unsecured
22 nonpriority claims in the total sum of $10,191,131.84.

23     12. The Bank intends to seek relief from the automatic stay
24 to enforce its rights and remedies under the Master Deed of Trust
25 and complete its non-judicial foreclosure proceedings under the
26 Master Deed of Trust in accordance with California law.

27     13. The Trustee and the Bank and their respective counsel
28 have been engaged in extensive, prolonged negotiations over a

339518.02 [XP] 25210

1 period of at least two months to reach an agreement regarding the
2 operations of the Debtor's business and the Property and the
3 Bank's providing of credit to pay the Trustee's expenses of
4 administration, including without limitation operating expenses.
5 These extensive negotiations culminated finally in the Agreement,
6 the primary terms of which are described in the preceding
7 Introduction.

8     14.  The Trustee has no funds to pay the expenses to operate
9 the Debtor's business and the Property.  The Trustee is willing to
10 operate the business and the Property in order to maintain,
11 preserve and protect the Property in its present condition and
12 ensure the continued Restaurant operations and the concomitant
13 employment of the Restaurant employees.  The Bank is willing to
14 provide credit to the Trustee to operate the business and the
15 Property and pay all of the Trustee's Expenses of Administration,
16 as defined in the Agreement, including without limitation the
17 operating expenses within the limits of the Proposed Budget.

18     15.  The Trustee has retained Roelke as her business manager
19 to assist the Trustee with the day-to-day management and
20 operations of the Debtor's business and the Property.  Pursuant to
21 the employment application, the Trustee proposed to compensate
22 Roelke on an ongoing monthly basis, subject to Roelke's filing of
23 a final fee application upon the closing of the case or the
24 conclusion of Roelke's services.  Roelke's services are essential
25 to the day-to-day management and operations of the business and
26 the property.

27     16.  The Trustee has spoken with representatives of the
28 Office of the United States Trustee regarding her operations of

11

the business and the Property. To the best of the Trustee's

knowledge, the United States Trustee does not oppose such

operations.

ARGUMENT

A. The Trustee's Operations Of The Debtor's Business And

The Property On A Limited Basis, And The Acquisition And

Use Of Credit To Pay The Operating Expenses, Are

Consistent With And Will Foster Public Policy And

Prevent The Loss Of Employment And The Concomitant

Hardships For About 200 People.

Section 721 of the Bankruptcy Code permits a Chapter 7

trustee to operate a debtor's business. A court has discretion to

allow a trustee to operate a business. In re Heissinger Resources,

Ltd., 67 B.R. 378, 384 (C.D. Ill. 1986). The standard for such

operations is whether to do so would be in the best interest of

the estate and consistent with the orderly liquidation of the

estate. 11 U.S.C. § 721; In re Engstrom, 33 B.R. 369, 372 (Bankr.

D.S.D. 1983).

Courts in Chapter 11 cases have acknowledged that Congress

has recognized that the continuation of the operations of a

debtor's business as a viable entity benefits the national economy

through the preservation of jobs and continued production of goods

and services. See, e.g., In re Drexel Burnham Lambert Group, Inc.,

138 B.R. 723, 759 - 760 (Bankr. S.D.N.Y. 1992). The United States

Supreme Court has recognized that "[t]he fundamental purpose of

reorganization is to prevent a debtor from going into liquidation,

12

1 with an attendant loss of jobs and possible misuse of economic

2 resources." NLRB v. Bildisco and Bildisco, 465 U.S. 513, 528, 104

3 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984).

4     The Handbook For Chapter 7 Trustees promulgated by the United

5 States Department of Justice discusses a trustee's business

6 operations in Chapter 7 cases, and explains:

7       Unlike a chapter 11 case, in a chapter 7, only the
trustee and not the debtor may be authorized to operate the

8 debtor's business. Such authorization might be appropriate,
for example, for the interim operation of the debtor's

9 business to complete work in process if the final product
will realize a net return greater than would be the value of

10 the component parts sold individually. **Similarly, continued**

11 **operation of the debtor's business may be authorized** when it
appears that the debtor's business can be sold for a greater

12 price as a going concern or **when sudden termination of the**
**business would cause great hardship to the general public or**

13 **innocent third parties, such as patients in a nursing home.**

14

15 United States Department of Justice, Handbook for Chapter 7
Trustees, p. 8-15 (2008) (emphasis added).

16

17     Section 364 of the Bankruptcy Code governs the acquisition of

18 credit. Section 364(a) provides that if the trustee is authorized

19 to operate the business of the debtor under section 721, unless

20 the court orders otherwise, the trustee may obtain unsecured

21 credit and incur unsecured debt in the ordinary course of business

22 allowable under section 503(b)(1) as an administrative expense.

23     Section 364(d)(1) provides that the court, after notice and a

24 hearing, may authorize the obtaining of credit or the incurring of

25 debt secured by a senior or equal lien on property of the estate

26 that is subject to a lien only if the trustee is unable to obtain

27 such credit otherwise and there is adequate protection of the

28 ///

13

1 interest of the holder of the lien on the property of the estate
2 on which the senior or equal lien is proposed to be granted.

3 The Trustee's operations of the Debtor's business and the
4 Property on a limited basis, and the acquisition and use of such
5 credit to pay the Trustee's Expenses of Administration, including
6 without limitation the operating expenses within the limits of the
7 Proposed Budget, are consistent with and will foster public
8 policy. Pursuant to the Agreement, the Bank has agreed to provide
9 the necessary credit to pay the Expenses of Administration,
10 including without limitation the operating expenses within the
11 limits of the Proposed Budget. The business operations will
12 enable BHFC to continue operating the Restaurant and thereby
13 enable the Restaurant to: (1) remain viable; (2) preserve, and
14 prevent the loss of, the employment of about 200 employees; and
15 (3) avoid hardships to the employees that would arise from the
16 loss of such employment, particularly during these difficult
17 economic times.

18 The Trustee is mindful that a Chapter 7 trustee often
19 operates a debtor's businesses in a Chapter 7 case to preserve the
20 business as an ongoing concern pending its disposition or to avoid
21 hardship to the general public or operate a debtor's real property
22 to preserve the real property and realize the equity in the real
23 property pending its disposition. In this unusual case, the
24 operations are necessary to enable the Restaurant to remain viable
25 and thereby prevent the loss of employment and the concomitant
26 hardships for about 200 people.

27 The Trustee is also mindful that a Chapter 7 Trustee often
28 seeks to obtain a "carve-out" to pay a dividend to unsecured

14

339518.02 [XP] 25210

creditors in cases where there is no equity in real and personal property. In this unusual case, the Trustee is not seeking to obtain a carve-out because any such dividend to unsecured creditors would be minimal. If the Bank exercises its power of sale under the Master Trust Deed and the trustee's sale of the Property does not generate any amounts to pay junior mechanics' liens, the total amount of the unsecured claims in this case will exceed $15,000,000.

B. The Trustee Should Be Authorized To Pay The Fees And Expenses On A Monthly Basis Up To The Aggregate Monthly Sum Of $8,000 Of Roelke As The Trustee's Business Manager.

Section 328 of the Bankruptcy Code provides that the trustee, with the court's approval, may employ a professional person on any reasonable terms and conditions of employment, including on an hourly basis.

The Trustee should be authorized to pay the fees and costs on a monthly basis and up to the aggregate monthly sum of $8,000 of Roelke, subject to Roelke's filing of a final fee application upon the closing of the case or the conclusion of Roelke's services. The Trustee retained Roelke as her business manager to assist the Trustee with the day-to-day management of the Debtor's business and the Property. Pursuant to the employment application, the Trustee proposed to compensate Roelke on an ongoing monthly basis, subject to Roelke's filing of a final fee application upon the closing of the case or the conclusion of Roelke's services.

///

15

1  Roelke's services are essential to the day-to-day operations of
2  the Debtor's business and the Property.

3

4                                    IV.

5                               CONCLUSION

6       Based upon the above reasons, the Trustee respectfully
7  requests that the Court enter an order: (1) authorizing the
8  Trustee to: (a) operate the business and the Property on a limited
9  basis from and after the Commencement Date up to and including
10 December 31, 2009; (b) obtain credit from the Bank in accordance
11 with the terms of the Agreement and use such credit to pay the
12 Trustee's Expenses of Administration, including without limitation
13 the operating expenses within the limits of the Proposed Budget;
14 and (c) pay the fees and costs on a monthly basis and up to the
15 aggregate monthly sum of $8,000 of Roelke, subject to Roelke's
16 filing of a final fee application upon the closing of the case or
17 the conclusion of Roelke's services; and (2) granting such other
18 and further relief that may be just and proper.

19 Dated: June 15, 2009      DANNING, GILL, DIAMOND & KOLLITZ, LLP

20
                            By: _____
21                              MATTHEW F. KENNEDY
22                              Proposed Counsel for
                                Amy L. Goldman,
23                              Chapter 7 Trustee

24

25

26

27

28

                                    16

                              041

## DECLARATION OF AMY L. GOLDMAN

I, Amy L. Goldman, declare as follows:

1. I am the duly acting and qualified Chapter 7 Trustee of the estate of Brockman Building Lofts, Inc. ("Debtor").

2. I have personal knowledge of the facts in this declaration, except those matters that are based upon information and belief and as to such matters, I believe such matters are true. If called as a witness, I could testify competently to these facts.

3. On April 1, 2009, the Debtor filed a voluntary Chapter 7 petition. I was later appointed as the Chapter 7 Trustee.

4. I am informed and believe that in or about late April or early May 2007, Countrywide Bank ("Countrywide"), as the predecessor-in-interest to Bank of America, N.A. ("Bank"), made a pre-petition loan of up to the principal sum of $35,000,000 to the Debtor, and the Debtor executed a pre-petition promissory note up to that principal amount in Countrywide's favor. The obligation evidenced by this promissory note is secured by a Master Construction Deed of Trust and a Supplemental Construction Deed of Trust (collectively, the "Master Trust Deed"), both of which were recorded on May 17, 2007 as Instrument Nos. 07-71201022 and 07-71201023, respectively, in the office of the Los Angeles County Recorder. The Master Trust Deed affects the real property consisting of a 12-story building located at 520 West Seventh St., Los Angeles, California ("Property").

5. I am informed and believe that the Property consists of: (a) about 80 vacant units that the Debtor physically and legally

17

converted into residential condominium units to be offered for sale; (b) a basement parking area; and (c) a retail/commercial unit that is located on the Property's ground floor and is currently leased to BHFC Operating, LLC ("BHFC"). I am informed and believe that BHFC operates an upscale casual restaurant, bar and gourmet food market known as Bottega Louie ("Restaurant") and that the Restaurant opened on April 9, 2009. I am also informed and believe that the Restaurant currently employs about 200 employees, who work breakfast, lunch and dinner shifts. I am also informed and believe that the employees include cooks and kitchen workers, whose shifts together are around the clock and include an overnight shift that prepares baked goods and other items for next day consumption and service.

6. I am informed and believe that the operations of the business and the Property require generally: (a) utilities, which consist of electricity, gas, water, waste removal, and telephone; (b) the maintenance, operation and monitoring of fire, smoke and other safety monitoring devices (some of which may operate using telephone or internet connections to remote monitoring services) in order to comply with building codes and other applicable non-bankruptcy law; and (c) ongoing maintenance and trouble service for the building elevators in order to comply with building and safety laws and facilitate certain Restaurant operations. I am also informed and believe that security services for 24 hours a day and seven days a week may be required to secure the Property as a result of the configuration of the Property and the need to maintain ingress and egress for customers, workers, and vendors involved in the Restaurant operations. In particular, because it

043

18

1 may not be possible to permanently close-off access to the
2 residential areas of the Property without interfering with the
3 Restaurant operations, security for the residential areas and the
4 Building may not be able to be provided generally without the
5 retention of a private security service.

6     7.    I am informed and believe that the business and the
7 Property are presently operating under a Temporary Certificate of
8 Occupancy ("TCO"), which has been extended and is presently set to
9 expire on November 12, 2009.

10     8.    I am informed and believe that on December 4, 2003,
11 Thermo Grand Avenue, L.L.C., as lessor, and the Debtor, as lessee,
12 entered into a Lease Agreement (Residential Parking Usage Only)
13 ("Parking Lot Lease"), whereby the Debtor leased about 51 parking
14 spaces in a separate parking lot adjoining the Property to
15 supplement the parking available in the basement of the Property.
16 A copy of the Parking Lot Lease is attached as Exhibit "1." As
17 indicated by the Parking Lot Lease, the term of the Parking Lot
18 Lease commences on the first day of the month after the receipt of
19 a Final Certificate of Occupancy for the Property.

20     9.    I am informed and believe that the Bank commenced pre-
21 petition non-judicial foreclosure proceedings under its Master
22 Deed of Trust by recording one or more Notices of Default with
23 respect to the Property.

24     10.    Attached as Exhibit "2" is a copy of the Debtor's
25 schedules in this case.

26     11.    I am informed and believe that the Bank intends to seek
27 relief from the automatic stay to enforce its rights and remedies
28 under the Master Deed of Trust and complete its non-judicial

19

044